IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| VICTORIA ROADCLOUD, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| PENNSYLVANIA BOARD OF | : | |
| PROBATION & PAROLE, et al. | : | NO. 05-3787 |

| | | |
|---|---|---|
| VICTORIA ROADCLOUD, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| PENNSYLVANIA BOARD OF | : | |
| PROBATION & PAROLE, et al. | : | NO. 06-2235 |

ORDER AND OPINION

JACOB P. HART                                        DATE:   January 26, 2007
UNITED STATES MAGISTRATE JUDGE

I.   Introduction

In this civil rights action, Plaintiffs allege that Defendants, the Pennsylvania Board of Probation and Parole, ("the Board"), and individuals Gary Scicchitano, Maria Marcinko, Willie Jones, Mark Weinstein and Daniel Solla, discriminated against African American and Hispanic female employees.  Plaintiffs have moved the Court to compel the Defendants to produce certain documents requested in discovery.  As explained below, Plaintiffs' motion will be granted in part and denied in part.

II.   Applicable Legal Principles

The Federal Rules of Civil Procedure are liberal with respect to discovery, permitting the requesting party to obtain even inadmissible material, as long as it is relevant to the claim or defense of any party, unprivileged, and reasonably calculated to lead to the discovery of admissible evidence.  Fed. R. Civ. P. 26(b)(1).

Federal Rule 33 requires a party served with interrogatories to respond to each within 30 days after they were served. Rule 33(b)(1) and (3). The party serving the interrogatories may move under Rule 37(a) to compel an answer to an interrogatory to which the receiving party has objected or which it has otherwise failed to answer. Rule 33(b)(5).

Similarly, Federal Rule 34 requires that a party served with a document request either produce the requested documents or else state a specific objection for each item or category objected to. Here, again, if the party served fails to respond adequately to a document request, the serving party may file a motion to compel under Rule 37(a). Fed. R. Civ. P. 34(b), 37(a)(1)(B).

III.    The Requests At Issue

On August 18, 2006, Plaintiffs served upon Defendants a second set of interrogatories, some of which included requests for production of documents. Exhibit A to Plaintiffs' Motion. Defendants Schicchitano, Marcinko, Jones and Weinstein responded through their attorney, who also represents the Parole Board, and so did Defendant Solla, who is represented by separate counsel. Exhibit B to Plaintiffs' Motion. Plaintiffs now maintain that the responses to the following requests were inadequate.

A.     Interrogatory No. 14

Identify the total number of investigations conducted by the OPR of parole board employees from 2000 to the present, including a breakdown by race, outcome/action(s) and district, of investigations conducted by the OPR of parole board employees from 2000 to the present. (*Sic.*).

In response to this interrogatory, Defendants other than Solla (these defendants are all represented by the same counsel, while Solla has a separate attorney; for the sake of convenience, I will refer to "Defendants other than Solla" simply as "Defendants") attached a chart providing information on investigations in each year, broken down by county, and with each investigation

referred to as "sustained", "unfounded", "withdrawn" or "other." Chart attached as Exhibit B to Plaintiffs' Exhibit B. However, the investigations are not broken down by race.

In its response to Plaintiffs' motion to compel, Defendants write that they could not provide the information as to race because the Board does not keep a statistical breakdown of the race of the investigated employees: "The defendants simply cannot provide information they do not have nor do they have to go through mountains of paper work to establish this information." This can be interpreted as an argument that it would be unduly burdensome to locate the information.

Review of the chart Defendants have provided, however, suggests that it would not be unduly onerous to identify the race of the investigated employees. A total of 305 investigations are at issue. Although Defendants have not provided any specific information about their methods of record-keeping, it seems likely that the race of each individual could be identified without "mountains of paper work." It is even possible that a simple list of names drawn from the investigative files would be sufficient, followed by a quick look at each employee's personnel file.

The Board can not be ordered to prepare compilations of information that it has not previously compiled. LaPiere v. Volkswagen AG, Civ. A. No. 88-2979, 1989 WL 52427 at * 1 (E.D. Pa. May 15, 1989); Webb v. Westinghouse Elec. Corp., 81 F.R.D. 431, 435-436 (E.D. Pa. 1978). In such circumstances, the remedy is that the Board may give Plaintiffs' counsel access to the raw data, for them to make their own compilations. Webb, supra at 436: ("[W]e decline to order Westinghouse to provide the [compilation] requested. We do emphasize, however, that it is Westinghouse's duty to give plaintiffs all the guidance they need in order to interpret and understand the raw data supplied to them."

I will therefore direct Defendants to, in their discretion, either (a) compile information as to the race of the individuals investigated; or (b) permit Plaintiffs' counsel access to the data from which this information can be compiled.  As to Solla, he is not responsible for obtaining this information, and I will not make any order with respect to him.

B.      Interrogatory No. 17

Question 17:  Describe what action(s) the Board and/or you have taken and/or are taking to deal with the Third Circuit's finding in <u>Mickens-Thomas v. Vaughn</u>, 2004 WL 61018 (3d Cir. Jan. 14, 2004), that the Parole Board acted in "bad faith" and retaliated against Mr. Mickens-Thomas and/or the jury finding and court opinion finding racial discrimination and retaliation in <u>Russ-Tobias v. Pennsylvania Board of Probation and Parole</u>, No. 04-cv-00270.  If no action is being taken, describe your reasons for taking no action.

Defendants' Response:  Answering defendants object to this Interrogatory as asking for irrelevant information the disclosure of which is not reasonably likely to lead to the discovery of relevant admissible evidence.  By way of further answer, without waiving any objection, the Board took no action in response to <u>Mickens-Thomas</u> since issues in the case had nothing to do with how Board  handles its employment decisions.  As to the decision in <u>Russ-Tobias</u>, to the extent the Board took any action in response to the decision such action would be protected by the governmental deliberative process privilege.

In their motion, Plaintiffs specify that they know of – and are seeking – at least one report, said to have been prepared by an individual named Ms. Kates.  Defendants claim that this report is privileged.

The deliberative process privilege is an executive privilege that applies to "confidential deliberations of law or policymaking, reflecting opinions, recommendations or advice."  <u>Startzell v. City of Philadelphia</u>, Civ. A. No. 05cv5287, 2006 WL 2945226 at *2 (E.D. Pa. Oct. 13, 2006), <u>quoting</u> <u>In re Grand Jury</u>, 821 F.2d 946, 959 (3d Cir. 1987).  It seeks to protect the quality of agency decisions, recognizing "that were agencies forced to operate in a fishbowl, the frank exchange of ideas and opinions would cease and the quality of administrative decisions would

consequently suffer." Redland Soccer Club, Inc. v. Department of the Army, 55 F.3d 827, 854 (3d Cir. 1995), citing N.L.R.B. v. Sears, Roebuck & Co., 421 U.S. 132, 151 (1975) and First Eastern Corp. v. Mainwaring, 21 F.3d 465, 468 (D.C. Cir. 1994).

To determine if the deliberative process privilege applies, courts in the Third Circuit first determine whether the communications are privileged, and then balance the parties' interests. Redland Soccer Club, supra. At the first step, the party seeking protection must show that the information sought is predecisional, in that it reflects the steps that led to the agency's final decision. Startzell, supra, citing Cipolla v. County of Rensselaer, Civ. A. No. 99-1813, 2001 U.S. Dist. LEXIS 16150 at *7 (N.D.N.Y. Oct. 10, 2001). The information sought must also be deliberative, reflecting the process the agency used to reach the decision. Id.

In weighing the parties' interests at the second step, courts in the Third Circuit consider (i) the relevance of the evidence sought to be protected; (ii) the availability of other evidence; (iii) the "seriousness" of the litigation and the issues involved; (iv) the role of the government in the litigation; and (v) the possibility of future timidity by government employees "who will be forced to recognize that their secrets are violable." Redland, supra, quoting First Eastern Corp., supra, at 21 F.3d 468 n. 5.

Defendants have attached to their Response a Declaration by Catherine McVey, Chairman of the Pennsylvania Board of Probation and Parole. Declaration, attached as Exhibit B. In it, McVey states that she directed the Board's EEO Officers to visit all ten district offices to conduct interviews seeking information as to the employees' work concerns and "how they felt they were being treated by the supervisors and co-workers." Employees were also asked for their ideas "on how the Board could improve upon its current policies and procedures." Employees

were not asked for their names, and the information was submitted to McVey without identifying the individuals interviewed. McVey concludes:

> As Chairman, I find the ability to conduct confidential interviews critical to the Board's ability to identify, address and improve upon workplace issues. Disclosure of this report would seriously undermine my ability to gather information from Board employees.

Declaration at ¶ 10.

Moreover, as described by Defendants:

> The report contains multiple conclusions and subjective opinions by the author of the report regarding the responses she received to her questions [to] the employees. Most important, the report contains a series of recommendations that the Board should consider and possibly implement in the future. It is based upon these recommendations that the Board has made policy changes positively impacting its relationship with its employees.

Defendants' Response to Motion to Compel, at 11.

Given this description, I conclude that the report at issue is privileged. Since the employees interviewed were not named in the report, it is not clear that those individuals would feel chilled by the report's release, as McVey has suggested. Nevertheless, McVey herself, or a similar administrator, might feel constrained in making an honest report of the data she gathered and wary of offering blunt suggestions for improvement if she thought her report would be seen by the public.

Nevertheless, Defendants have conceded that the Board made policy changes based on its understanding of the report. Those policy changes are discoverable, as they are clearly neither predecisional nor deliberative. They are, rather, "decisional", i.e., they represent decisions made by the Board. Therefore, while I will not compel Defendants to disclose the report to which McVey refers, I will compel them to identify all policy changes made as a result of that report,

and to produce any documents reflecting or promulgating those policy changes.

Again, I agree with Solla that this is not material within his control, and will not direct him to provide any further response.

C.   Interrogatory No. 21

From the period from January 1, 1996 through the date of your responses to these Interrogatories, please list all governmental investigations, including internal investigations, in which an employee, former employee, or prospective employee has alleged discriminatory practices and/or acts that have been conducted by or are pending against defendants with the United States Justice Department, united States Labor Department, United States Equal Employment Opportunity Commission and/or other federal or state governmental entity that has conducted an investigation of defendant.  With respect to each investigation, describe all relevant facts, including, but not limited to, the following: a.  name of charging person; b. dates of charging complaints; c. type of discrimination alleged; d. outcome of the case, or if the case is pending, status of the case; e.  please attach to your responses to these interrogatories copies of all documents, correspondence, files, records, memoranda, and notes containing information responsive to this interrogatory.

Defendants other than Solla responded by objecting to the request as overly broad, unduly burdensome and oppressive.  However, they also attached as Exhibit D to their response a chart identifying approximately 100 cases by (a) the name of the charging person; (b) the entity charged; (c) the basis of the charge, i.e. "discharge" or "not selected for promotion"; (d) the date of the charge; (e) the grievance number and (d) the disposition, i.e., "closed", "dismissed," "pending."

Plaintiffs now claim that this information cannot be complete, because it ignores "such cases as" Russ-Tobias and a case identified only as Joseph Burton.  They also claim that certain cases which were settled are mischaracterized as "closed" or "dismissed."

Defendants are largely right in arguing in their response that "Plaintiffs' disagreement with the content of the answer is not a basis to compel defendants to provide a different answer." Defendants are no doubt aware that discovery responses are verified, and that they would be subject to sanction if they were shown to have been untruthful in their responses. In that light, I can only remind Defendants of their duty to supplement their response if they believe there is any missing information. However, I will also ask Defendants to (a) identify all cases on the chart known to have been settled; and (b) provide an explanation to Plaintiffs of why the Russ-Tobias case, and the Joseph Burton case (if this case is known to Defendants) are not on the chart. Once again, I will not direct Solla to provide any further response.

D.    Interrogatory No. 22

Identify by name, address, job title, and date of employment all African American employees who worked under defendants Jones, Solla and/or Weinstein for any length of time from April 1, 1997 through the date of your answers to these Interrogatories. For each such employee who no longer works in the same division/department as defendant Jones, Solla and/or Weinstein, please state the reason(s) for said person's departure and identify all persons with knowledge thereof.

Defendants provided Plaintiff with a chart, attached as Exhibit E to their response, identifying over seventy African American employees by name, division, job title, and hire date. In their response to Plaintiffs' motion, Defendants write:

> Admittedly, the chart dos not completely answer the interrogatory. Unfortunately, the defendants have no reasonable means of identifying all past African American employees of the Board who worked under Jones, Solla and/or Weinstein. Equally, the Board has no reasonable means of identifying why those employees no longer work under the supervision of Jones, Weinstein and/or Solla.

Solla, however, reports that he has agreed to review the chart "and identify all those African-American employees that he recalls supervising, directly or indirectly, and the reason each left the Board's employment *if he knows*." (Emphasis in original). I will adopt Solla's constructive suggestion, and direct Jones and Weinstein to do the same thing.

8

IV.  Conclusion

For the reasons I have discussed, I will now enter the following:

O R D E R

AND NOW, this   26th   day of January, 2007, upon consideration of Plaintiffs' Motion to Compel, docketed in this case as Document No. 56, and Defendants' responses thereto, it is hereby ORDERED that the motion is GRANTED IN PART AND DENIED IN PART, and it is further ORDERED that:

1.  The Pennsylvania Board of Probation and Parole shall, within 20 days of the date of this Order, provide Plaintiffs with, at its option, either (a) a list of the race of each individual already identified in its response to Plaintiffs' Interrogatory No. 14; or (b) access to the data from which Plaintiffs' counsel can compile the information as to the race of these individuals;

2.  The Pennsylvania Board of Probation and Parole shall, within 20 days of the date of this Order, provide Plaintiffs with a full and complete description of any policy changes it made as a result of the report described by Christine McVey in her affidavit, and shall provide Plaintiffs with copies of all documents reflecting or promulgating these changes;

3.  The Pennsylvania Board of Probation and Parole shall, within 20 days of the date of this Order, supplement its response to Plaintiffs' Interrogatory No. 21 with (a) an indication as to which of the cases set forth on the chart already provided were, in fact, settled; and (b) a written explanation of why the Russ-Tobias and Joseph Burton cases are not listed on this chart; and

4.  Individual Defendants Jones and Weinstein shall, within 20 days of the date of this Order, provide Plaintiffs with the identification of all African American employees identified in the chart previously marked as Exhibit E to Defendants' discovery responses, which they recall supervising, whether directly or indirectly, and the reason each left the Board's employment, if known.

BY THE COURT:

/s/Jacob P. Hart
_____
JACOB P. HART
UNITED STATES MAGISTRATE JUDGE